Filed 7/29/15  Maddox v. Jeffrey A. Lake, APC CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GARY MADDOX, | D066181 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00073743-CU-PN-CTL) |
| JEFFREY A. LAKE, APC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Mark-Robert Bluemel for Plaintiff and Appellant.

The Law Offices of Nathan Shaman and Nathan A. Shaman for Defendant and Respondent.

INTRODUCTION

Gary Maddox appeals a judgment dismissing his legal malpractice action against Jeffrey A. Lake, APC (Lake) after the court sustained, without leave to amend, Lake's general demurrer to Maddox's first amended complaint (amended complaint or

complaint). Maddox alleged that Lake committed malpractice by advising him that leasing his building for use as a medical marijuana dispensary would not expose him to risk of criminal prosecution. In April 2011 federal agents arrested Maddox, against whom federal criminal charges were brought. In his demurrer, Lake argued that Maddox's action was barred by the statute of limitations set forth in Code of Civil Procedure[1] section 340.6. In sustaining Lake's demurrer, the court rejected Maddox's tolling arguments and found his action was time-barred.

On appeal Maddox claims his action was not time-barred and, thus, the trial court erred in sustaining Lake's demurrer. In support of this claim, Maddox raises three contentions. First, he contends his facing federal criminal charges was a "legal disability" within the meaning of the tolling provision set forth in section 340.6 subdivision (a)(4) (hereafter section 340.6(a)(4)). Second, he contends that "actual innocence" is an essential element of his civil legal malpractice cause of action and, thus, that the statute of limitations was tolled until the criminal charges against him were dismissed because he could not have proven his actual innocence until these charges were dismissed. Last, Maddox contends that he did not suffer "actual injury" within the meaning of the tolling provision set forth in section 340.6, subdivision (a)(1) (hereafter section 340.6(a)(1)) because he did not suffer actual injury until the criminal charges against him were dismissed.

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise specified.

2

The parties have filed the following three opposed motions, which we consider with this appeal: (1) Lake's motion to disregard Maddox's appellant's reply brief, (2) Lake's motion for sanctions on appeal, and (3) Maddox's cross-motion for sanctions on appeal. We deny the motions and affirm the judgment.

BACKGROUND

A. *Factual Background*[2]

In the summer of 2010 Maddox, the owner of an office building, entered into a one-year lease agreement with Ronnie Chang for the purpose of operating a medical marijuana dispensary. Prior to signing the lease agreement, Maddox requested a meeting with Chang's attorney, Jeffrey A. Lake. Upon speaking with one of Lake's associates, Lance Rogers, Maddox received assurances that Chang's medical marijuana dispensary would be operating legally, having filed all necessary and appropriate paperwork in California and having abided by the relevant guidelines.

Maddox asked about the legal status of medical marijuana from the standpoint of the federal government. Maddox was advised about the "Eric Holder Memo of 2009," which said that the government would not intervene with medical marijuana dispensaries operated legally according to California state law. However, Lake failed to inform Maddox that he could still be prosecuted and his property seized under federal law despite the Eric Holder memo. Lake also failed to inform Maddox that he could be

---

[2]      For purposes of our review of the judgment of dismissal that followed the court's sustaining of Lake's demurrer without leave to amend, we must assume the truth of the pertinent and properly pleaded or implied factual allegations set forth in the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

charged as a coconspirator under federal law for renting his property to a medical marijuana dispensary.

In early 2010 the Drug Enforcement Agency (DEA) began investigating indoor marijuana operations. Through their investigation, the DEA agents identified a network of individuals whom they suspected of illegally manufacturing and distributing marijuana within San Diego and Riverside Counties. The DEA agents determined that this group of individuals mainly utilized two dispensaries, both of which were operated by Chang. One of the dispensaries, "Extreme Holistic Care," operated out of the space that Maddox leased to Chang.

On April 28, 2011, DEA agents executed a raid pursuant to a search warrant on the dispensary located on Maddox's property and seized several pounds of marijuana and marijuana-related products. The agents arrested Maddox that same day. The government charged Maddox with conspiracy to distribute marijuana. Maddox spent four nights in custody. Additionally, Maddox's property was subject to forfeiture pursuant to federal law

On July 2, 2013, the criminal charges against Maddox were dismissed.

B. *Procedural Background*

On October 31, 2013, Maddox commenced this legal malpractice lawsuit against Lake. In his original complaint, Maddox asserted causes of action for negligence, negligent infliction of emotional distress, and legal malpractice.

Lake challenged the original complaint by filing a general demurrer asserting that the action was time-barred. Maddox responded by filing his amended complaint,

4

reasserting the original allegations but adding two new allegations: (1) he was factually innocent, and (2) "[t]he present action was tolled under [] section 340.6(a)(4), [because Maddox] was suffering from a 'legal disability' which restricted his ability to file the present action since he was facing Federal criminal charges with a potential five-year minimum mandatory sentence."

Lake challenged Maddox's amended complaint by filing a general demurrer in which he argued that the complaint failed to allege facts sufficient to constitute a cause of action because the action was barred by the statute of limitations set forth in section 340.6.[3] Specifically, Lake argued that although Maddox was correct in asserting that the statute of limitations for legal malpractice is tolled when the plaintiff is under a legal disability, Maddox was under no such legal disability. Lake averred that section 352.1 allows tolling for plaintiffs who are imprisoned, but it provides no support for Maddox's contention that merely facing criminal charges is a legal disability.

In opposing the demurrer, Maddox claimed that the statute of limitations was tolled because (1) his facing criminal charges created a legal disability within the meaning of section 340.6(a)(4); (2) "actual innocence" is an element of his malpractice cause of action such that the statute of limitations was tolled until July 2, 2013, when the criminal charges were dismissed and (he asserts) he was able to prove his actual

---

3     Although Lake brought his demurrer on the additional ground that Maddox had failed to allege actual innocence, Lake did not address this ground in his memorandum of points and authorities.

innocence; and (3) he did not suffer "actual injury" until the dismissal of the criminal charges.

After hearing oral arguments, the court sustained the demurrer as to all three causes of action without leave to amend. The court's minute order cited the running of the statute of limitations as the basis for sustaining the demurrer.[4] Specifically, the court indicated that it did not find Maddox's contention regarding his "legal disability" persuasive within the meaning of section 340.6 (a)(4). The court noted that, although Maddox filed his original complaint within four months of the dismissal of the criminal charges, he was only actually confined (i.e. imprisoned) for four days in late April 2011. The court stated that section 352.1 "requires more than currently alleged by [Maddox] to toll [his] claims against [Lake]."

Maddox timely appealed the judgment of dismissal. Thereafter, the parties filed their three opposed motions: (1) Lake's motion to disregard Maddox's appellant's reply brief, (2) Lake's motion for sanctions on appeal, and (3) Maddox's cross-motion for sanctions on appeal.

STANDARD OF REVIEW

"A demurrer tests the legal sufficiency of factual allegations in a complaint." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42 (*Rakestraw*).) A general demurrer challenges the legal sufficiency of the complaint on the ground it fails to state facts sufficient to constitute a cause of action. (§ 430.10, subd. (e).)

---

4        The hearing was not reported.

On appeal from a judgment dismissing a complaint after a demurrer is sustained without leave to amend, we review de novo the trial court's decision to sustain the demurrer, and we review under the abuse of discretion standard the decision to deny the plaintiff leave to amend. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)

In reviewing the sufficiency of a complaint against a general demurrer, this court treats the demurrer as admitting the truth of all properly pleaded material facts, as well as facts inferred from the pleadings, but not the truth of contentions, deductions, or conclusions of fact or law. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Rakestraw*, *supra*, 81 Cal.App.4th at p. 43.) When a general demurrer is sustained, this court determines whether the complaint states facts sufficient to constitute a cause of action under any legal theory. (*Schifando,* at p. 1081; *Rakestraw*, at p. 43.) "On appeal, a plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law." (*Rakestraw*, at p. 43.)

DISCUSSION

I. *MADDOX'S CLAIM THAT THE STATUTE OF LIMITATIONS SHOULD BE TOLLED*

Maddox claims his action was not time-barred because the running of the limitation period set forth in section 340.6, section (a) (hereafter section 340.6(a)) was tolled. We reject this claim.

A. *Civil Legal Malpractice Statute of Limitations*

Section 340.6(a) states in part that, "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional

7

services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

The tolling provisions of subdivisions (a)(1) and (a)(4) of section 340.6 state: "[I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) [t]he plaintiff has not sustained actual injury. [¶] . . . [¶] (4) [t]he plaintiff is under a legal . . . disability which restricts the plaintiff's ability to commence legal action."

"[B]y enacting [section 340.6(a)(4)], which tolls the statute during a legal disability, the Legislature intended to refer to the general legal disability tolling provision of [former] section 352." (*Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152, 155 (*Bledstein*).) Former section 352 is now codified as section 352.1. Section 352.1, subdivision (a) (hereafter section 352.1(a)) provides: "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, *imprisoned on a criminal charge, or in the execution under the sentence of a criminal court* for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." (Italics added.) One of the actions mentioned in Chapter 3 is an action for legal malpractice. (See § 340.6(a) ["[a]n action against an attorney for a wrongful act or omission . . . arising in the performance of professional services"].)

8

B. *Analysis*

1. *Maddox's claim of legal disability*

Maddox first contends his facing federal criminal charges created a "legal disability" within the meaning of section 340.6(a)(4), because it restricted his ability to commence his civil legal malpractice case against Lake. Specifically, Maddox claims that requiring him to file a legal malpractice claim while facing criminal charges would amount to a waiver of his Fifth Amendment right against self-incrimination. He states "[h]e could not file a civil complaint against respondent while he was facing criminal charges, because it necessarily contains admissions, which would have been used against him by the Assistant United States Attorney in the federal criminal case."

In support of his contention, Maddox cites *Bledstein*, *supra*, 162 Cal.App.3d 152, for the proposition that the Legislature intended section 340.6 (a)(4) to be interpreted broadly, thus "open[ing] the door" to legal disabilities beyond those specifically enumerated in the statute. Maddox's reliance on *Bledstein* is misplaced because that case is factually and legally distinguishable.

In *Bledstein* a convicted criminal sued his criminal defense attorney for legal malpractice. (*Bledstein*, *supra*, 162 Cal.App.3d at p. 155.) The attorney asserted the statute of limitations in section 340.6 barred his former client's claim for legal malpractice. (*Bledstein*, at pp. 155-156.) The former client countered that the statute of limitations was tolled because he was under the legal disability of imprisonment pursuant to former section 352, subdivision (a)(3) (now found in section 352.1), which restricted his ability to commence the action. (*Bledstein*, at p. 156.)

9

The *Bledstein* court held that despite being transferred out of the prison and into a halfway house, the plaintiff was still serving time in execution of his sentence. (*Bledstein*, *supra*, 162 Cal.App.3d at p. 169.) Thus, he still met the criteria for a legal disability within the meaning of former section 352 (a)(3) allowing the statute of limitations to be tolled. (*Bledstein*, at p. 169.)

*Bledstein* is distinguishable because here, Maddox, unlike the plaintiff in that case, was not imprisoned for any substantial period, nor was he convicted and under execution of sentence.

In support of his claim that his facing criminal charges was a legal disability, Maddox relies on the *Bledstein* court's statement, "We believe by enacting a tolling provision *as broad as section 340.6*[(*a*)(*4*)] the Legislature intended to incorporate the other general tolling provisions contained in chapter 4." (*Bledstein*, *supra*, 162 Cal.App.3d at p. 162, Maddox's emphasis.) By emphasizing the *Bledstein* court's use of the phrase "as broad as section 340.6[(a)(4)]," Maddox is implicitly contending that the "legal disability" tolling provision of that subdivision is sufficiently broad to encompass one's facing criminal charges.

However, the court narrowed the term "legal disability" in section 340.6(a)(4) to include only "other general tolling provisions contained in chapter 4." (*Bledstein*, 162 Cal.App.3d at p. 162.) The court held that "by providing for tolling when '[the] plaintiff is under a legal or physical disability which restricts the . . . ability to commence legal action' the Legislature intended all of the legal and physical disabilities contained in chapter 4 to suspend operation of the statute. When the Legislature enacted section 340.6

10

it was aware of these other tolling provisions." (*Bledstein*, at p. 162.) Chapter 4 contains section 352.1, which allows for tolling when the plaintiff is under the legal disability of *imprisonment*. (§ 352.1(a).) Maddox's situation (facing criminal charges while released on bail), unlike that of the *Bledstein* plaintiff, does not constitute imprisonment within the meaning of section 352.1. Also, his situation is not incorporated into or addressed by any of the "other general tolling provisions contained in chapter 4." (*Bledstein*, at. p. 162.)

Maddox asserts that "[i]f [he] had filed the civil complaint while he was still a defendant in a federal drug case, it would have been an admission of guilt." This assertion is unavailing. We see nothing in the complaint he actually filed in this case that would have amounted to an admission of guilt in the federal criminal case against him. Maddox makes no attempt to identify any specific allegation in his complaint that would have been an admission of guilt. Thus, Maddox has failed to meet his burden of showing his facing federal criminal charges "restrict[ed] [his] ability to commence legal action" within the meaning of section 340.6(a)(4).

Furthermore, once he commenced his action, Maddox could have requested, and reasonably could have expected to be granted, a stay of the civil proceedings until the federal criminal proceedings were resolved. The California Supreme Court has explained that "'trial courts have inherent authority to stay malpractice suits, holding them in abeyance pending resolution of underlying litigation.' By this means, courts can ensure that the plaintiff's claim will not be barred prematurely by the statute of limitations." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1211.)

11

For the foregoing reasons, we reject Maddox's claim that commencing his legal malpractice suit within the statutory period provided by section 340.6 would have jeopardized his Fifth Amendment right against self-incrimination.

2. *Claim that the "actual innocence requirement" tolled the statute of limitations*

Maddox also claims that the statute of limitations should have been tolled until the charges against him were dismissed on July 2, 2013, because the dismissal of the charges demonstrated his actual innocence. He further states that he only decided to lease his property to a medical marijuana dispensary because Lake advised him to do so. Citing *Wiley v. County of San Diego* (1998) 19 Cal.4th 532, Maddox asserts that "[a] legal malpractice case arising out of a criminal proceeding, in California, like most jurisdictions, also requires proof of actual innocence." Maddox's reliance on *Wiley* is misplaced because the facts in *Wiley* are not similar to those in Maddox's case, nor is the reasoning of the *Wiley* court applicable here.

In *Wiley*, a *convicted* criminal defendant sued his *criminal defense attorney* alleging ineffective assistance in investigating and establishing a defense. (*Wiley*, *supra*, 19 Cal.4th at p. 534.) The issue was whether a claim for legal malpractice arising in a criminal proceeding required the plaintiff to demonstrate actual innocence of the crime for which he was convicted. (*Ibid.*) The California Supreme Court, in differentiating the elements of a civil malpractice case from a criminal malpractice case noted that "[i]n criminal malpractice cases, the clear majority of courts that have considered the question also require proof of actual innocence as an additional element." (*Id.* at p. 536.) The *Wiley* court held that, in a criminal malpractice action actual innocence is a necessary

12

element of the plaintiff's cause of action for "reasons of policy and pragmatism." (*Id.* at pp. 534, 545.)

First, the court reasoned that as a matter of public policy, convicted criminals should not be allowed to pursue a legal malpractice claim without demonstrating actual innocence; otherwise, permitting them to pursue a legal malpractice claim would allow them to profit from or take advantage of their wrongdoing, thereby shocking the public conscience and generally discrediting the administration of justice. (*Wiley*, *supra*, 19 Cal.4th at p. 537.) The court also reasoned that allowing convicted criminals to pursue legal malpractice claims without a demonstration of actual innocence would impermissibly shift responsibility for the crime away from the criminal and onto an attorney, which would have the effect of diminishing the consequences of the convict's criminality and undermining the justice system. (*Id.* at p. 537.) In sum, the court held that requiring actual innocence in criminal malpractice claims is appropriate because "'the notion of paying damages to a plaintiff who actually committed the criminal offense . . . is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement.'" (*Id.* at p. 539, quoting *Holliday v. Jones* (1989) 215 Cal.App.3d 102, 115, fn. 7.)

In addition to public policy reasons for adopting the actual innocence requirement, the *Wiley* court also explained that various "pragmatic difficulties [(which we need not discuss here)] would arise from simply overlaying criminal malpractice actions with the civil malpractice template." (*Wiley*, *supra*, 19 Cal.4th at p. 544.)

13

Here, Maddox, unlike the *Wiley* plaintiff, is not a convicted criminal defendant suing his criminal defense counsel for alleged legal malpractice. Maddox is alleging a wrongful act or omission on the part of Lake in a civil context before any criminal charges were brought against Maddox. Thus, the *Wiley* decision is not applicable here.

3. *Claim that the statute of limitations was tolled pending "actual injury"*

Last, citing section 340.6(a)(1),[5] Maddox contends that he did not suffer "actual injury" until the criminal charges against him were dismissed. The California Supreme Court has held that "[t]he test for actual injury under section 340.6 . . . is whether the plaintiff has sustained any damages compensable in an action . . . against an attorney for a wrongful act or omission arising in the performance of professional services." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751.) In determining when the plaintiff has suffered an injury in a legal malpractice claim, the California Supreme Court observed, "[o]rdinarily, the client already has suffered damage when it discovers the attorney's error." (*Id.* at p. 743.) The court noted that "the statute of limitations will not run during the time the plaintiff cannot bring a cause of action for damages from professional negligence." (*Id.* at p. 751.) In regard to tolling, the court said, "[u]nder section 340.6, the one-year limitations period commences when the plaintiff actually or constructively discovers the facts of the wrongful act or omission, but the period is tolled until the plaintiff sustains actual injury." (*Ibid.*)

---

5    Section 340.6(a)(1) provides: "[T]he [limitations] period shall be tolled during the time that any of the following exist:  [¶] (1) the plaintiff has not sustained actual injury."

14

Maddox asserts that the "actual injury" did not occur until the dismissal of the criminal charges, long after the alleged wrongful act or omission by Lake. However, Maddox both "actually suffered" and "actually discovered" the "actual injury" for purposes of section 340.6 at the time of his arrest and seizure of his property by federal agents. Maddox does not cite any persuasive authority or compelling arguments to the contrary. Accordingly, we reject this contention.

## II. *THE PARTIES' THREE OPPOSED MOTIONS*

### A. *Lake's Motion To Disregard Maddox's Reply Brief*

Lake has filed a motion requesting that this court disregard Maddox's appellant's reply brief on the ground that it raises new issues not addressed in Maddox's opening brief. Lake asserts that "[t]he entirety of Maddox's reply brief argues one of two theories: (1) [] section 340.6 violates Maddox's right against self-incrimination; or (2) the definition of 'legal disability' should include a scenario in which a plaintiff would be 'force[d] [] to waive his Fifth Amendment right against self-incrimination." Lake complains that "Maddox did not argue any such theories in his opening brief."

In support of his motion, Lake cites *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, in which the court stated that "it is now well settled, 'we need not [and do not] consider new issues raised for the first time in a reply brief in the absence of good cause." (*Id.* at p. 548, quoting *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 214.)

In his opposition, Maddox disputes that he raised new issues in his reply brief. He asserts his reply brief "may cite new cases to answer arguments made by [Lake]" in his

[respondent's] brief."  Maddox further asserts his reply brief "just elaborated on his fundamental right against self-incrimination."  Maddox also argues the cases he cited in his reply brief are in response to Lake's assertion that he (Maddox) did not suffer any "legal disability" within the meaning of section 340.6 (a)(4) that would toll the legal malpractice statute of limitations set forth in that section.

We deny Lake's motion to disregard Maddox's reply brief.  Maddox raised in his opening brief, albeit not fully or explicitly, that his Fifth Amendment right against self-incrimination could be jeopardized.  Maddox's Fifth Amendment contention appeared as part of his claim that his legal malpractice action was not time-barred because he was suffering a legal disability.  Specifically, Maddox asserts in his opening brief that "[h]e could not file a civil complaint against [Lake] while he was facing criminal charges, because *it necessarily contains admissions, which would have been used against him . . . in the federal criminal case*."  (Italics added.)  We agree with Lake that Maddox should have been more forthcoming in his opening brief, but conclude that Maddox's Fifth Amendment argument did appear in his opening brief, and thus, did not appear for the first time in the reply brief.

B.  *Lake's Motion for Sanctions*

In his second motion Lake seeks $5,610 in attorney fees on appeal pursuant to section 907,[6] claiming Maddox's appeal is frivolous.  Lake relies on *Avila v. Continental*

_____

6    Section 907 provides:  "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as

*Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1261-1262 (*Avila*), in which the court explained that "[a]n appeal is frivolous 'only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.'" (*Id.* at p. 1262.)

Lake also relies on *Maple Properties v. Harris* (1984) 158 Cal.App.3d 997, 1010, in which the court stated that "[s]anctions for an appeal which is partially frivolous are appropriate if the frivolous claims are a significant and material part of the appeal." He complains that a "[c]omparison of Maddox's opening brief with his opposition to the demurrer in the trial court demonstrates a classic 'cut and paste job,'" and that "[n]o original research was performed for the filing of this appeal."

Additionally, Lake asserts that "Maddox's argument that criminal charges constitute a legal disability is objectively frivolous because it is wholly unsupported by any statute or published case law." Citing *Bledstein*, *supra*, 162 Cal.App.3d 152, Lake states that "[t]he case law is crystal clear that the only kinds of disabilities included within the rubric of legal disability are those otherwise specified in Chapter 4 of Part 2 of the Code of Civil Procedure," and he complains that Maddox "made no effort to whatsoever to distinguish *Bledstein* or to cite any case law that would support an argument for changing existing law, as attorneys are expected to do for settled issues."

may be just." The procedures for requesting sanctions on appeal are set forth in rule 8.276(a)(1) of the California Rules of Court.

17

Lake also asserts that "Maddox's arguments concerning actual innocence and actual injury were mere recitations of law with no significant argument" and that "Maddox's appeal was filed in bad faith to delay the outcome and harass [Lake]."

In his opposition to Lake's motion for sanctions, Maddox asserts that his appeal is not frivolous because section 128.7 allows an attorney to make a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. He argues his appeal raises the legal issue of whether the legal malpractice statute of limitations should have been tolled under the "unique circumstances" of this case. He asserts that he "suffered a legal disability [that] prevented him from filing a malpractice claim against [Lake] because [if] the Complaint []had been filed during the statute of limitations period, [it] would have been a written admission of guilt, which the United States Attorney's office would have used against him in the criminal case." He also asserts that he "suffered a 'legal disability,' [by] having to defend himself in a felony criminal case, as described in [] section 340.6(a)(4)."

Maddox also asserts that "[i]t was not until after the charges and federal criminal case were dismissed against [him] that the tolling of the legal malpractice statute [of limitations] ended. [He] sued [Lake] within the time limits of the tolled statute and should be allowed to proceed with this case on its merits."

In support of his opposition, Maddox has submitted the declaration of his appellate attorney, Mark-Robert Bluemel, who states that he represented Maddox both as trial counsel in this case and as cocounsel in defending him in the federal criminal case. He also states that exhibit A to his declaration is a letter prepared by Maddox detailing

18

the harm he claims he and his family suffered as a result of following the legal advice Lake gave him. He declares that Maddox "was [] made aware of [] section 340.6(a)(4) and agrees and believes, that he was suffering a 'legal disability' under the language of the Statute and chose his Constitutional Right Against Self-Incrimination over filing a civil suit against [Lake]." Bluemel purports to authenticate two other exhibits attached to his declaration: a "screen shot" from his computer showing Lake's website, which indicates that Lake's appellate counsel, Nathan Shaman, is a partner or associate of Lake (exhibit "B"; see ¶ 6); and another "screen shot" from his computer showing Shaman's website, which shows he practices criminal defense.

Lake filed written objections on various grounds to virtually every paragraph in Bluemel's declaration.

We deny Lake's motion for sanctions against Maddox. California courts have held that "'"[f]ree access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a colorable claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties."'" (*Avila*, *supra*, 165 Cal.App.4th at p. 1261, quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 648.) In *Avila*, the court stated that "[s]anctions should be 'used most sparingly to deter only the most egregious conduct.' [Citation.] That an appeal lacks merit does not, alone, establish that it is frivolous." (*Avila*, at p. 1261.)

Here, Maddox's contention regarding his legal disability is at least a colorable claim, the resolution of which has required careful consideration by the court. Neither Maddox nor Lake cited any authority on the precise issue raised by Maddox. Although

19

we have concluded that the legal disability claim is ultimately unavailing, we do not agree with Lake that this claim is frivolous.

In regard to Maddox's other two claims about actual innocence and actual injury, we recognize that these two claims are thin, with little support, but we elect to not impose sanctions.

C. *Maddox's Cross-motion for Sanctions*

Maddox filed a cross-motion for sanctions seeking an order requiring Lake and his attorney, Nathan Shaman, to pay the attorney fees he incurred in responding to Lake's motion to disregard Maddox's reply brief and Lake's motion for sanctions. He argues his appeal is not frivolous and his opening brief contains a nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of new law regarding tolling of the legal malpractice statute of limitations. He argues that Lake's reliance on *Avila*, *supra*, 165 Cal.App.4th 1237, is misplaced because the *Avila* court did not award sanctions and held that sanctions should be used sparingly. Maddox asserts that Lake's motions are themselves frivolous and are meant to harass Maddox and force him to waste time responding to his frivolous requests. Maddox also asserts that the declaration of his attorney (Bluemel) and Maddox's letter, which is attached to Bluemel's declaration as exhibit A, "detail the legal disabilities he suffered while he was charged with being a participant in a federal drug distribution conspiracy and facing a mandatory minimum prison sentence of five years."

In support of his motion, Maddox has submitted the declaration of his attorney, Mark-Robert Bluemel, which is the same declaration that supports Maddox's opposition

20

to Lake's motions to disregard Maddox's reply brief and for sanctions.  Bluemel states that Lake and its attorney should be ordered to pay $6,247.95 for the time Bluemel has spent "researching and preparing[] the opposition papers to [Lake's] ancillary motions." The declaration purports to authenticate exhibit D to the declaration, which is an accounting of the time he spent on these matters.

We deny Maddox's cross-motion for sanctions.  We acknowledge Lake's frustration regarding Maddox's incomplete arguments in his opening brief, which impaired Lake's ability to respond completely. Therefore, we conclude that Lake's motion to disregard the reply brief is not frivolous.  Lake's motion for sanctions also was not frivolous.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.


NARES, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.

21